IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN

JOSE MELVIN GONZALEZ,                          )
                                               )
              Plaintiff                        )    3:24-CV-00293-RAL
                                               )
       vs.                                     )    RICHARD A. LANZILLO
                                               )    Chief United States Magistrate Judge
                                               )
LEONARD ODDO, IN HIS OFFICIAL                  )
CAPACITY AS WARDEN OF                          )    MEMORANDUM OPINION ON
MOSHANNON VALLEY                               )    PETITION FOR WRIT OF HABEAS
PROCESSING CENTER; BRIAN                       )    CORPUS
MCSHANE, IN HIS OFFICIAL                       )
CAPACITY AS ACTING FIELD                       )    IN RE: ECF NO. 1
OFFICE DIRECTOR OF THE                         )
IMMIGRATION AND CUSTOMS                        )
ENFORCEMENT, ENFORCEMENT                       )
AND REMOVAL OPERATIONS                         )
PHILADELPHIA FIELD OFFICE;                     )
ALEJANDRO MAYORKAS, IN HIS                     )
OFFICIAL CAPACITY AS                           )
SECRETARY OF THE DEPARTMENT                    )
OF HOMELAND SECURITY; AND                      )
MERRICK GARLAND, IN HIS                        )
OFFICIAL CAPACITY AS ATTORNEY                  )
GENERAL OF THE UNITED                          )
STATES;                                        )
                                               )
              Defendants                       )

Presently before the Court is a petition for a writ of habeas corpus under 28 U.S.C. § 2241 filed by Petitioner Jose Melvin Gonzalez, an immigration detainee at the Moshannon Valley Processing Center ("MVPC") in Clearfield County, Pennsylvania.  For the reasons stated below, the petition will be granted.  The Respondents will be ordered to, within ten (10) days from today, afford the

Petitioner an individualized bond hearing before a neutral immigration judge and that seven (7) days thereafter, the parties shall file a written status report updating the Curt on the outcome of the bond hearing.[1]

A.  Background

Petitioner is a citizen and native of the Republic of El Salvador.  The exact date of his initial entry into the United States is unknown, but there is no dispute that he has resided in this country for decades.  On August 15, 2015, ICE issued Gonzalez a Notice to Appear, charging him as removable under 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1227(a)(2)(B)(i) based on his conviction for an aggravated felony related to illicit trafficking in a controlled substance.  On September 8, 2015, an immigration judge entered a removal order against Gonzalez, and he was removed to El Salvador on October 2, 2015.  He subsequently reentered the United States without authorization.

On May 22, 2022, the United States District Court for the Central District of California revoked Gonzalez's supervised release arising from a February 2013 RICO conviction and sentenced him to 24 months of imprisonment.  ICE encountered Gonzalez in federal criminal custody on June 8, 2023, and, upon completion of his sentence, assumed physical custody of him at MVPC on October 6, 2023, pursuant to 8 U.S.C. § 1231(a).

ICE served Gonzalez with a Notice of Intent/Decision to Reinstate Prior Removal Order on June 29, 2023.  See ECF No. 1 ¶ 20.  Gonzalez thereafter sought

---

[1] This case was reassigned to the undersigned on March 13, 2026.  All parties have consented to the jurisdiction of a United States Magistrate Judge under 28 U.S.C. § 636(c).

2

protection from removal, asserting a fear of persecution or torture upon return to El Salvador. In October 2023, an asylum officer conducted a reasonable fear interview pursuant to 8 C.F.R. § 208.31 and found no reasonable fear of persecution or torture. An immigration judge vacated that determination and placed Gonzalez in withholding-only proceedings.

At a hearing on October 30, 2023, Gonzalez conceded his ineligibility for asylum and withholding of removal and sought deferral of removal under the Convention Against Torture ("CAT"). An individual merits hearing on the CAT application was scheduled for February 13, 2024, but was continued at the request of newly appearing counsel and rescheduled to April 4, 2024.

In the interim, ICE conducted multiple custody reviews. On December 28, 2023, ICE Enforcement and Removal Operations ("ERO") in Philadelphia ordered continued detention based on Gonzalez's criminal history, gang affiliation, and pattern of immigration violations. On April 1, 2024, ICE conducted a panel custody review pursuant to 8 C.F.R. § 241.4(i), at which Gonzalez and his counsel had an opportunity to be heard. The reviewing officers recommended continued detention on public safety and flight risk grounds, a recommendation concurred in by the Philadelphia Field Office Deputy Director and ICE Headquarters.

At the April 4, 2024 merits hearing, the immigration judge granted Gonzalez deferral of removal under CAT. *See* ECF No. 1 ¶ 25. DHS appealed to the BIA on April 19, 2024. On April 22, 2024, ICE Headquarters conducted a 180-day custody review pursuant to 8 C.F.R. §§ 241.4 and 241.13 and again ordered continued

detention, citing Gonzalez's criminal history, gang affiliation, prior removal and unlawful reentry, and the likelihood of removal should DHS prevail on appeal.

On July 30, 2024, the BIA remanded the matter for a decision with adequate factual findings and legal analysis to permit meaningful appellate review. The immigration judge issued a new decision on remand again granting CAT deferral of removal. *See* ECF No. 1 ¶ 28. DHS filed a second appeal on October 11, 2024, and submitted its brief on November 7, 2024. Gonzalez filed a motion for leave to file an untimely response brief, which the BIA granted on December 4, 2024.

ICE conducted a further custody review on October 18, 2024, pursuant to ICE Directive 16004.1, and on November 21, 2024 issued a decision finding that exceptional circumstances warranted Gonzalez's continued detention pending resolution of the appeal. On November 25, 2024, ERO issued a further Decision to Continue Detention pursuant to 8 C.F.R. § 241.4(e), (f), and (g).

Gonzalez filed the instant Petition on December 12, 2024, raising four grounds for relief: (1) ICE failed to conduct custody reviews in accordance with its own regulations and policies; (2) DHS's appeal of the CAT deferral grant is legally without merit; (3) his detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because he has been confined for more than six months and his removal is not reasonably foreseeable; and (4) prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment under controlling Third Circuit authority. *See generally* ECF No. 1. Gonzalez seeks immediate release or,

in the alternative, a bond hearing before this Court or the immigration court. He remains detained at MVPC under 8 U.S.C. § 1231(a)(6).

On March 25, 2025, ICE sent a Request for Acceptance of Alien (Form I-241) to Ecuador, Guatemala, and Nicaragua. Ecuador declined on March 25, 2025, and Guatemala declined on May 14, 2025. ICE's request to Nicaragua remains outstanding. No third country has agreed to accept Petitioner, and he has been detained in ICE custody for more than a year.

B. Jurisdiction

The general habeas statute, 28 U.S.C. § 2241, confers jurisdiction on this Court to hear both statutory and constitutional challenges to Petitioner's detention. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). The statute authorizes the Court to grant a writ of habeas corpus to a person held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

C. Discussion

Petitioner is detained under Section 241(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a). This provision concerns removal and detention of aliens who have been ordered removed from the United States and states, in pertinent part:

> [(1)(A)] Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").
> ...
> [(2)(A)] During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been

5

> found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.
>
> ...
>
> [(6)] An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(1), (2), (6).

While Section 241(a)(6) permits the Government to detain certain aliens beyond the removal period, this authority is limited by the rights guaranteed all persons under the Due Process Clause of the Fifth Amendment, U.S.C.A. Const. amend. V. In *Zadvydas,* the Supreme Court held that "indefinite detention of aliens" under Section 241(a)(6) "would raise serious constitutional concerns...". 533 U.S. at 682. The Court therefore "construed the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Id.* "[F]or the sake of uniform administration in the federal courts," the Court found that post-removal-order detention of six months was "presumptively reasonable" but that detention beyond six months becomes unreasonable and unauthorized "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and the Government fails to "respond with evidence sufficient to rebut that showing." *Id.* at 701. The Court emphasized that the six-month presumption period did not mean that every alien detained and not removed during that period is entitled to release.

*Id.* "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* But what may be considered a "significant likelihood of removal in the reasonably foreseeable future" "shrink[s]" as "the period of post removal period grows." *Id.*

Petitioner has been detained since October 2023. *See* ECF No. 34, p. 3 n.3. His more than seventeen months of detention exceeds the duration necessary to trigger the six month presumption recognized in *Zadvydas*. And based on facts of record, the Court also finds that Petitioner has met his burden of demonstrating that there is no significant likelihood of his removal in the reasonably foreseeable future. First, the CAT deferral of Petitioner's removal to El Salvador, the only country to which he has a claim to citizenship, supports that his removal is unlikely to occur in the reasonably foreseeable future. This deferral will continue until the Government finds a third country that will accept Petitioner. Thus, the CAT deferral remains in effect pending the BIA's resolution of DHS's second appeal. Therefore, that deferral effectively forecloses removal to El Salvador for the foreseeable future and requires the Government to identify a willing third country before Petitioner can be removed.

Second, the Government has sought acceptance from Ecuador, Guatemala, and Nicaragua, but none has agreed. Ecuador and Guatemala have expressly declined; Nicaragua has not responded. The Government has offered no evidence that any country is likely to accept Petitioner or is actively considering doing so.

7

Indeed, Ecuador and Guatemala have expressly declined to accept Petitioner. The Government has produced no evidence to support a finding that any country is likely to accept or is even actively considering accepting Petitioner. And third, depending on the third country to which ICE seeks to remove him, Petitioner may be statutorily protected from removal. *See E.D.Q.C. v. Warden, Stewart Det. Ctr.*, 789 F. Supp. 3d 1234, 1240-41 (M.D. Ga. June 3, 2025), *reconsideration denied, stay granted*, 2025 WL 1829416 (M.D. Ga. July 2, 2025) ("[A]s recently discussed by the district court in D.V.D., an alien must be given notice prior to removal to a third country and an opportunity to seek withholding of removal to that country under 8 U.S.C. § 1231(b)(3) and [CAT] (citing *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 386–87 (D. Mass. 2025), *opinion clarified*, 2025 WL 1323697 (D. Mass. May 7, 2025), *and opinion clarified*, 2025 WL 1453640 (D. Mass. May 21, 2025), *reconsideration denied sub nom. D.V.D. v. U.S. Dep't of Homeland Sec.*, 786 F. Supp. 3d 223 (D. Mass. 2025)).

Because Petitioner has met his burden to demonstrate that he is not likely to be removed in the reasonably foreseeable future, the burden shifts to the Government to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. The only evidence proffered by the Government is its unsuccessful efforts to locate a third country to accept Petitioner. This evidence falls far short of rebutting Petitioner's showing. *See Jimenez Chacon v. Lyons*, No. 25-cv-977, 2025 WL 3496702, at *8 (D.N.M. Dec. 4, 2025) (noting that contacting a third-party country to request acceptance of a petitioner with receiving any indication of likely

acceptance does not to demonstrate a significant likelihood of removal in the reasonably foreseeable future); *Ahrach v. Baltazar*, No. 25-cv-03195, 2025 WL 3227529, at *5 (D. Colo. Nov. 19, 2025) (finding the government did not meet its burden by reaching out to three countries soliciting removal without receiving a response); *Salazar-Martinez v. Lyons*, No. 2:25-cv-61, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025) (finding the government failed to meet its burden when it submitted repatriation requests to four countries and two were denied and two received no response for five months); *Hassoun v. Sessions*, No. 18-cv-00586, 2019 WL 78984, at *5 (W.D.N.Y. Jan. 2, 2019) (finding government failed to meet its burden when it had four requests for travel documents pending for about five months).

Based upon the entirety of the record, the Court finds that Petitioner's continued detention under 8 U.S.C. § 1231(a) violates his rights under the Due Process Clause of the Fifth Amendment. The Court further finds, however, that Petitioner's immediate release is not required or appropriate given his extensive criminal history. Instead, the Court will order that within ten (10) days, Petitioner must receive an individualized bond hearing before a neutral immigration judge and that, within seven (7) days thereafter, the parties shall provide notice to the Court of the outcome of the bond hearings.

D. Conclusion

The petition for a writ of habeas corpus will be granted and Respondents will be directed within ten (10) days to provide Petitioner an individualized bond

hearing before a neutral immigration judge and that within seven (7) days thereafter, the parties shall notify the Court by filed report of the outcome of the bond hearing.

An appropriate Order follows.

DATED this 28th day of April, 2026.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES
MAGISTRATE JUDGE

10